AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>LEROY RUSSELL<br><br>Defendant(s) | Case No.<br>21-mj-8179 |

FILED BY _____ TM _____ D.C.

May 13, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 12, 2021__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324(a)(1)(A)(iv) and (B)(iv) | Encouring and inducing an alien to come to, enter, and reside in the United States, resulting in death |
| 18 U.S.C. 2237(a)(1) | Failure to heave to |

This criminal complaint is based on these facts:

Please see the attached affidavit of Special Agent Daniel Richichi, Homeland Security Investigations ("HSI"), which is incorporated herein by reference.

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Daniel Richichi, HSI
Printed name and title

Sworn and attested to me by applicant by telephone (FaceTime) per the requirements of Fed. R. Crim. P. 4(d) and 4.1

Date: 05/13/2021

_____
Judge's signature

City and state: West Palm Beach, Florida

Hon. Bruce Reinhart, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Daniel Richichi, first being duly sworn, do hereby depose and state the following:

1.  I am employed as a Special Agent with the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") and have been so employed since December 2008. During that time, I have received training through the HSI training program at Glynco, Georgia, and I have conducted numerous investigations pertaining to the maritime smuggling of narcotics, bulk cash, and humans into the United States. Before joining HSI, I was an Officer with the DHS, U.S. Customs and Border Protection, for approximately five-and-a-half years.

2.  As a Special Agent with HSI, I have received extensive instruction in the investigation of the maritime smuggling of humans, bulk cash, and narcotics. During my tenure with HSI, I have personally and significantly participated in approximately over one hundred prior smuggling-related investigations concerning violations of 8 U.S.C. § 1324(a), 31 U.S.C. § 5332, and 21 U.S.C. § 952. I have personally participated in approximately two hundred arrests of individuals for smuggling violations and have participated in the debriefings and interviews of hundreds of persons, to include human smugglers, bulk cash smugglers, drug smugglers, and informants, who by their own admission have been involved in those illegal activities, concerning the methods and practices of maritime smugglers. On the basis of the foregoing, I have become very familiar with the ways, manners, and means by which maritime smugglers conduct their illegal activities, the smuggling routes and concealment methods used by drug and human smugglers, and the unique patterns employed by these illegal smuggling individuals and organizations. Additionally, I have been certified by U.S. Customs and Border Protection, Air & Marine Operations as a maritime interdiction crewmember and have participated in the maritime interdictions of vessels on over one dozen prior occasions.

3. The facts set forth in this affidavit are based on my personal knowledge; information obtained in this investigation from others, including other law enforcement officers; my review of documents and pictures of computer records related to this investigation; and information gained through training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support a criminal complaint, I have not included each and every fact known to me and law enforcement concerning this investigation, but have set forth those facts necessary to establish probable cause to believe that on or about May 12, 2021, Leroy RUSSELL, a citizen and national of the Bahamas, committed the crimes of encouraging and inducing an alien to come to, enter, and reside in the United States, resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (B)(iv), and failing to heave to, in violation of 18 U.S.C. § 2237(a)(1).

**PROBABLE CAUSE**

4. On or about May 11, 2021, at approximately 10:15 P.M., a U.S. Customs and Border Protection ("CBP") Multi-Role Enforcement Aircraft ("MEA") departed Homestead Air Reserve Base on a maritime border security patrol of the Florida Straits and waters of the Northern Bahamas. At approximately 11:40 P.M., U.S. CBP Air and Marine Operations Center advised the MEA of a possible surface target of interest ("TOI"), detected via land-based radar, approximately 10 miles east of the Jupiter Inlet in Jupiter, Florida, heading westbound. While the MEA was heading to the last known position of the TOI, the crew of the MEA contacted CBP Air and Marine Operations ("AMO") West Palm Beach Marine Unit ("WPBMU") Costal Interceptor Vessel ("CIV") M-817 to relay the information passed to the crew of the MEA.

5. The CBP AMO WPBMU asset M-817 dispatched is a 41' CIV, SAFE BOAT, Interceptor Class Vessel, with police markings along the port and starboard hull. The police vessel

2

is equipped with emergency blue lights, sirens, dual spotlights, and deck lights. The crew consisted of three sworn, certified, and uniformed federal law enforcement officers, that is, a Vessel Commander, Tactical Boarding Officer, and Crewmember.

6. At approximately 12:07 A.M. on May 12, 2021, M-817 located the TOI described as an approximate 25' white, center-console vessel with twin outboard Yamaha 150 horsepower engines, operating without navigation lights, in violation of law, approximately fifteen yards from the shoreline in two to three feet of water in breaking surf south of the Jupiter Inlet, Jupiter, Florida. M-817 approached the TOI within twenty-five yards in deeper water outside the surf zone. The surf was approximately two to three feet high, and M-817 could not approach without beaching. Agents onboard M-817 observed approximately two or three persons jump off the TOI. M-817 then energized their blue lights and spotlights, and the TOI turned away from the beach and accelerated. Agents observed that there were numerous migrants, including two children, onboard the TOI. Agents onboard M-817 observed a black male wearing a white shirt and dark shorts or pants, later identified as Leroy RUSSELL, operating the vessel.

7. Upon RUSSELL's actions and failing to obey the lawful order of an authorized federal law enforcement officer to heave to, the Vessel Commander requested the deployment of two warning shots (aerial diversionary device or "flares") in accordance with the AMO Small Boat Interdiction Policy. The Tactical Boarding Officer successfully deployed two warning shots well forward of the TOI. The Vessel Commander instructed the law enforcement crew to prepare for disabling fire and subsequently fired disabling shots into the port and starboard engines of the TOI, resulting in the TOI becoming inoperable. The MEA and assisting law enforcement attempted to locate the migrants who had absconded from the TOI, with negative results.

8. On May 12, 2021 at approximately 3:00 A.M., the migrants onboard the TOI were transferred to the Coast Guard Cutter "Ethridge". A total of twelve persons (ten adults and two children) were transferred for biometric processing and analysis. None of the persons were determined to be United States Citizens or in possession of any documentation authorizing them to enter the United States.

9. At approximately 6:09 A.M. on May 12, 2021, a fisherman, fishing along the shore near beach access number 55 in Jupiter, Florida, observed a body in the water a few feet from the shore and called 911. Jupiter Police Department Officers responded to the scene at approximately 6:12 A.M. and retrieved the body from the water. The subject, later identified as a male citizen of Haiti, referred to herein by his initials "J.W.," was pronounced deceased by responding law enforcement.

10. Shortly thereafter, responding law enforcement encountered "N.J-B," a male citizen of Haiti, on the beach side of beach access 47 in Jupiter, Florida wearing wet clothing and covered in sand. Additionally, law enforcement located "S.T.," a male citizen of Haiti, in the vicinity of Lighthouse Cove Adventure Golf located at 617 N. Hwy A1A, Jupiter, Florida 33477. Responding law enforcement observed that "S.T.'s" clothing was wet and covered in sand. Both N.J-B. and S.T. were taken into custody by the U.S. Border Patrol. N.J-B. and S.T. were subsequently transported to the U.S. Border Patrol Station, Riviera Beach, Florida for administrative processing.

11. Using a Creole interpreter, U.S. Border Patrol Agents asked N.J-B. and S.T. questions limited to the search and rescue operations of the migrants who had been observed jumping from the TOI. In pertinent part, N.J-B. and S.T. admitted that they had been on the TOI.

12. At approximately 11:30 A.M., a U.S. Border Patrol Agent and an HSI Group Supervisor entered the holding cell where N.J-B. was being held. N.J-B. speaks limited English. N.J.B. was asked if he had any family or friends onboard the vessel with him today. N.J-B. stated, "Yes." N.J-B. was asked if he knew J.W., and he stated "yes" and that he was a "friend." He pointed to J.W.'s written last name to communicate that J.W. was his friend. N.J-B. was then shown a photograph of an identification card which was recovered from J.W.'s body and identified J.W. as having been on the boat with him.

13. On May 12, 2021, at approximately 7:45 P.M., a Regional Concurrence Team call was convened between the DHS partners, and it was determined that the ten adults and two children would be brought ashore for further investigation by Homeland Security Investigations. The ten adults and two children were transported to the U.S. Coast Guard Station Lake Worth Inlet, located within the Southern District of Florida, and relinquished to the custody of the U.S. Border Patrol, Riviera Beach, Florida for administrative processing.

14. The ten adults and two children were identified as follows:

    a. Leroy RUSSELL – an adult male citizen of the Bahamas

    b. J.M. – an adult male citizen of Haiti

    c. F.P. – an adult female citizen of Haiti

    d. J.P. – an adult male citizen of Haiti

    e. L.P. – an adult female citizen of Haiti

    f. K.P. – an adult male citizen of Haiti

    g. R.D. – an adult male citizen of Haiti

    h. J.B. – an adult male citizen of Haiti

    i. R.E. – an adult male citizen of Haiti

   j. A.J-L. – an adult male citizen of Haiti

   k. Minor female child citizen of Haiti

   l. Minor female child citizen of Haiti

15. At approximately 10:27 P.M., HSI agents interviewed RUSSELL at the U.S. Border Patrol Station located in Riviera Beach, Florida. RUSSELL, a citizen of the Bahamas, was able to read, write, and speak the English language with no communication barriers. Prior to beginning the recorded interview, agents read RUSSELL his *Miranda* warnings via a pre-printed form. Agents asked RUSSELL if he understood his rights, and he acknowledged in the affirmative. RUSSELL waived his rights in writing and elected to speak with the interviewing agents. RUSSELL stated the following:

 a. RUSSELL stated that on May 11, 2021, sometime prior to sunset, he traveled to Holmes Rock, an area on the west end of Grand Bahama Island, where the boat and migrants were currently waiting.

 b. RUSSELL stated he was provided a handheld GPS by a person he was unwilling to name, which had the coordinates pre-set to where he was to operate the vessel to.

 c. RUSSELL stated he operated the vessel with the migrants onboard to "Old Bahama Bay," a resort/marina on the far west end of Grand Bahama Island, where he waited for nightfall. Once it was dark, RUSSELL stated he operated the vessel with the migrants onboard to the pre-set location in the GPS. I examined a forensic download of the GPS, which corroborated RUSSELL's statements.

 d. RUSSELL stated that he was coming to the United States for a better life, and that he knew that the migrants did not have permission to come to the United States.

 Furthermore, RUSSELL acknowledged that he knew that bringing the migrants to the United States was illegal.

e. RUSSELL stated that upon approaching land in the United States, he trimmed the vessels engines up and was preparing to disembark the vessel with the migrants, when M-817 approached.

f. RUSSELL stated that two or three migrants jumped off the boat, at which point M-817 activated its blue lights. RUSSELL stated that he trimmed the vessel's engines down, turned away from shore, and accelerated. RUSSELL acknowledged seeing one warning shot flare going in front of his vessel and that he was being directed to stop the vessel by the crew of M-817. RUSSELL stated he continued to operate the vessel when the crew of M-817 began firing at the vessel. RUSSELL stated that the vessel became inoperable after the disabling fire to the outboard engines of the vessel.

g. RUSSELL stated that he knew that M-817 was a law enforcement vessel and that he should have stopped when the blue lights were energized and at their verbal commands to stop the vessel.

## CONCLUSION

16. WHEREFORE, on the basis of the foregoing, I respectfully submit that probable cause exists to charge Leroy RUSSELL with encouraging and inducing an alien to come to, enter,

and reside in the United States, resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (B)(iv), and failing to heave to, in violation of 18 U.S.C. § 2237(a)(1).

Respectfully submitted,

_____
Daniel Richichi
Special Agent
Homeland Security Investigations

Subscribed and sworn to me by applicant
by telephone (Facetime) per the requirements
of Fed. R. Crim. P. 4(d) and 4.1
this __13__ day of May, 2021.

_____
HON. BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-mj-8179

UNITED STATES OF AMERICA

v.

LEROY RUSSELL,

        **Defendant.**
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   ___ Yes  ✓ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   ___ Yes  ✓ No


Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

BY: _____
ALEXANDRA CHASE
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5501746
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:   (561) 209-1011
Fax:  (561) 659-4526
Email: alexandra.chase@usdoj.gov